UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
L.K. COMSTOCK & COMPANY, INC.,
                 Plaintiff,

                            **MEMORANDUM & ORDER**

     -against-
                             09 cv 3352 (RJD)(VVP)


THALES TRANSPORT & SECURITY, INC.,
                 Defendant.
--------------------------------------------------------X
DEARIE, Chief Judge.

      Plaintiff seeks a preliminary injunction pending resolution of the parties' underlying

contract dispute in arbitration, as well as an order enjoining defendant from revealing certain

confidential information provided by plaintiff under a related non-disclosure agreement executed

by the parties. For the reasons stated on the record at the evidentiary hearing held before this

Court on August 31, 2009, and as further outlined below, plaintiff's motion is granted.

**I.    Background**

      Plaintiff L.K. Comstock & Company, Inc. ("LKC") alleges that Thales Transport &

Security, Inc. ("Thales") is acting in violation the parties' Teaming Agreement (Ex. 1 ("Teaming

Agreement"))[1] and that these actions pose a grave risk of violating the parties' corresponding

Non-Disclosure Agreement. (See Ex. 4 ("NDA"); see also Teaming Agreement ¶ 3.) In

accordance with the Teaming Agreement, the dispute will be submitted to arbitration for

resolution. (See Teaming Agreement ¶ 10.) On August 10, 2009, Judge Matsumoto issued a

temporary restraining order directing the parties to "comply with the non-disclosure agreement

---

      [1]Unless otherwise noted, "Ex." refers to exhibits received in evidence at the August 31,
2009 hearing. "Tr." refers to the transcript of the hearing.

and to return any confidential documents previously received from their adversary." (See Minute Entry, dated August 10, 2009.) That order remains in place. By order dated September 1, 2009, the Court also entered a temporary restraining order enjoining defendant from soliciting or reviewing bids in contravention of the Teaming Agreement. (See Dkt. No. 25.)

At the hearing on plaintiff's motion, both parties presented evidence regarding the essential underlying facts at issue, few of which are genuinely in dispute. Thales develops and integrates computer-based train control systems ("CBTC"). LKC installs CBTC systems, and has installed the only CBTC system currently operative within the New York City Transit system (the Canarsie Line, servicing Manhattan and Brooklyn). (See Affidavit of Ben D'Alessandro, dated Aug. 4, 2009, Dkt. 17, ¶ 3 (hereinafter "Aug. 4, 2009 D'Alessandro Aff.").) In anticipation of the New York City Transit Authority's ("NYCT") proposed CBTC installation for the Flushing line (Contract No. S-32723, servicing Queens and Manhattan), Thales and LKC entered into a Teaming Agreement whereby Thales agreed to work exclusively with LKC in bidding for the Flushing contract and LKC promised it would not offer more favorable pricing terms as installation subcontractor to, or in a joint venture with, Thales's only competitor for the project: Siemens (NYCT qualified only Thales and Siemens as bidders for the Flushing CBTC project). (See Teaming Agreement ¶¶ 4, 5; Amended Compl. ¶9; Aug. 4, 2009 D'Alessandro Aff. ¶ 3.) NYCT officially issued an IFB (Information for Bidders) on June 22, 2009. (See Amended Compl. ¶ 5.) Bids for the Flushing contract are currently due on September 24, 2009.

The Teaming Agreement expressly authorizes LKC to enter into a joint venture relationship with Siemens. (See Teaming Agreement ¶ 5.) Paragraph 5 of the Teaming Agreement states, without ambiguity, "[i]t is understood and accepted . . . that LKC may

participate as a committed subcontractor to, *or a joint venture partner of*, any other entity that may submit a bid to the Owner [NYCT] to undertake the [Flushing CBTC] Project." (Id. (emphasis added).) As expressly permitted by the Teaming Agreement, plaintiff entered into a Teaming Agreement with Siemens, which contemplated a joint venture between the two companies for the purpose of submitting a bid for the Flushing project. (See (Amended Compl., Ex . B ("Siemens/LKC Teaming Agreement").)

By letter dated July 15, 2009, Thales President and CEO John Brohm informed LKC President Ben D'Alessandro that Thales was withdrawing from the Teaming Agreement, effective immediately, on the ground that the LKC/Siemens joint venture had "unbalanced the level playing field that the contemplated subcontract arrangement with each principal would have extended." (See Ex. 8.) Mr. Brohm testified at the hearing. He attempted to explain that the joint venture between LKC and Siemens—though permitted under paragraph 5 of the Teaming Agreement—would necessarily result in better commercial terms than those offered to Thales in a prime-sub relationship, and is therefore in violation of paragraph 4 of the Teaming Agreement.

On July 30, 2009, Thales issued a Request for Proposal ("RFP"), to LKC and others, seeking an installation subcontractor for the Flushing line project. (See Ex. 19; Tr. 75:23-25.) Gary Guild, a senior estimator at LKC, testified that Thales may have already identified at least one potential alternate subcontractor. (Tr. 138:19-140:9.) Responses to the RFP were due by 5 p.m. on September 1, 2009. (Ex. 19 at 26.) However, the second TRO prohibits Thales from reviewing any responses it may have received.

## II.    Discussion

### A.    Preliminary Injunction Pending Arbitration

Plaintiff seeks a preliminary injunction enjoining defendant:

> . . . pending a determination in arbitration and a judicial confirmation of the
> award, from soliciting or receiving bids or proposals from companies other than
> LKC to install Thales' CBTC system on the New York City Transit Authority's
> (NYCT") Flushing Line and from submitting a bid to the NYCT for the Flushing
> Line project that names any company other than LKC as its installation contractor.

(See Pl.'s Restated and Expanded Application for a Temporary Restraining Order and a

Preliminary Injunction, 21.)  Plaintiff's request is granted for the following reasons.

To obtain a preliminary injunction, LKC must show: "(a) irreparable harm and (b) either

(1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to

make them a fair ground for litigation and a balance of hardships tipping decidedly toward the

party requesting the preliminary relief."  Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d

70, 72 (2d Cir. 1979).  This familiar framework applies to requests for preliminary injunctions

pending arbitration, where, as here, the moving party seeks to preserve the status quo in order to

implement the parties' agreed-upon mechanism of dispute resolution.  See, e.g., Blumenthal v.

Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1052-54 (2d Cir. 1990); Roso-Lino

Beverage Distribs., Inc. V. Coca-Cola Bottling Co. of NY, Inc., 749 F.2d 124, 125 (2d Cir.

1984).  This approach is in keeping with federal policy favoring arbitration.  Blumenthal, 910

F.2d at 1054.

In this context, plaintiff has demonstrated that irreparable injury will occur if Thales

proceeds with its efforts to identify and negotiate with alternate CBTC installers on the Flushing

project.  Absent an injunction, "the harm [LKC] seeks to address via arbitration will occur before

the arbitrator[s] can render a decision," depriving plaintiff of a meaningful opportunity to resolve the dispute through arbitration. <u>Credit Suisse Securities (USA) LLC v. Ebling</u>, No. 06-11339, 2006 U.S. Dist. Lexis, at *8 (S.D.N.Y. Nov. 27, 2006). The parties have expressed confidence that the arbitration will conclude prior to the September 24, 2009, deadline for submission of bids for the Flushing project. (<u>See</u> Tr. CITE.) In addition, Thales may request an extension of that deadline from NYCT, though the Court's decision is not contingent upon NYCT's granting of the request. There is, in short, reason to believe that preliminary relief intended to preserve the efficacy of the arbitration process would not frustrate or foreclose entirely the larger goal of the Teaming Agreement: to submit a joint bid for the Flushing project. Thus, plaintiff has established that irreparable harm would result without the Court's intervention.

The credible evidence readily demonstrates that plaintiff has also shown a strong likelihood of success on the merits. The defendant's explanation that an expressly authorized relationship somehow violates the Teaming Agreement is utterly unconvincing. The Court is not persuaded that the so-called advantages of a joint venture arrangement put Thales at a decided disadvantage. Regardless of the pros and cons of either arrangement, the Teaming Agreement specifically permits LKC to form a joint venture with Siemens and therefore LKC's relationship with Siemens cannot itself violate the Teaming Agreement. Whatever prompted Thales to renege on its agreement, the after-the-fact justification advanced in sworn testimony, in common parlance, just does not fly.

**B.    Preliminary Injunction Enforcing the NDA**

The Court hereby incorporates the restraints authored by Judge Matsumoto enjoining both parties from deviating from their obligations under the NDA, and directing Thales to take steps

to verify that *all* documents containing confidential information, as defined by the NDA, are returned to LKC.

## III.  Conclusion

Plaintiff's motion for a preliminary injunction is granted.  Defendant is enjoined from soliciting or receiving bids or proposals from companies other than LKC to install Thales's CBTC system on NYCT's Flushing Line and from submitting a bid to the NYCT for the Flushing Line project that names any company other than LKC as its installation contractor.  Any bids received in response to defendant's July 30, 2009, RFP shall be delivered unopened to counsel and held until the dispute is resolved.  Despite the unfortunate posture of the parties, it is anticipated that they will work together to expedite the arbitration process.

Defendant shall undertake a comprehensive review of documents in its possession, ensuring that all confidential information within the scope of the NDA is returned to LKC. SO ORDERED.

Dated: Brooklyn, New York
　　　　September 2☑, 2009

s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge